[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 13, 2003
THOMAS K. KAHN
CLERK**

No. 02-13050

D. C. Docket No. 01-0134 CV-BU-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HARVEY BOWMAN,
BOBBIE BOWMAN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 13, 2003)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

## INTRODUCTION

The Platinum Club is an adult entertainment establishment that occupies real property owned by Harvey J. and Bobbie J. Bowman. The Club is allegedly used as a front for prostitution and money laundering. After the Government filed and served an *in rem* civil action seeking forfeiture of the property, the Bowmans allegedly continued to operate the Club for illegal purposes. The district court granted an ex parte application for a warrant to seize the Club prior to trial. Following the seizure, the Bowmans received a post-seizure adversarial hearing, in accordance with 18 U.S.C. §985(e), at which they contested the basis for the ex parte seizure. Following the hearing, the district court entered an order upholding the seizure. The Bowmans appeal, challenging this interlocutory order. We dismiss the appeal because we conclude that we lack jurisdiction to consider it.

## PROCEDURAL HISTORY

The Bowmans have owned and operated the Platinum Club in Anniston, Alabama since approximately 1993. For several years, the IRS, FBI and the Calhoun County Sheriff's Office received reports from private citizens and other law enforcement agencies that the Bowmans employed exotic dancers who also engaged in various sexual activities with the Club's patrons for money. These activities allegedly took place both on and off the Club's premises.

2

In May 2001, following an undercover investigation by local law enforcement agencies, the Sheriff's office executed a search warrant upon the Platinum Club, seizing cash and business records. Shortly thereafter, the United States Government filed a civil forfeiture action against the Club. The Government's complaint alleged that the Bowmans, together with their employees and other individuals, used the Club for promotion of prostitution and money laundering in violation of state and federal laws, subjecting the property to forfeiture under 18 U.S.C. § 981(a)(1)(A).

The Government served a copy of the complaint and notice of the forfeiture action on the Bowmans; the Government also posted a "Notice of Complaint for Forfeiture against Real Property" at the Club. Additionally, the Government filed a lis pendens against the real property. The Bowmans responded to the complaint, but no other action was taken at that time and the Club remained open for business.

The investigation into the illegal activities at the Club continued after the civil forfeiture action was filed, allegedly revealing that the prostitution and money laundering had not ceased. Hence, in January 2002, the Government made an ex parte application to the district court under 18 U.S.C. § 985(d)(1)(A)[1] to seize the real

---

[1] 18 U.S.C. § 985(d)(1) states:

(d)(1) Real property may be seized prior to the entry of an order of forfeiture if –
(A) the Government notifies the court that it intends to seize the property before trial; and
(B) the court –
(i) issues a notice of application for warrant, causes the notice to be served

property pretrial due to the its continued illegal use. In support of its seizure application, the Government offered only the affidavit of FBI Special Agent Joseph Perkins. Special Agent Perkins indicated that a cooperating witness, who was an entertainer at the Club (both before and after the search and seizure by state officials), confirmed the price list for prostitution services performed by employees of the club. According to Special Agent Perkins, the cooperating witness stated that prostitution at the Club continued as usual after the club was searched by state authorities. Special Agent Perkins also located a customer of the Club who admitted that he exchanged sex with an employee of the Club for money after the civil forfeiture action was filed.

In its ex parte warrant application, the Government asserted that the continued unlawful use of the Platinum Club constituted an exigency that justified the issuance of a seizure warrant under § 985(d)(1)(B)(ii) without providing the Bowmans prior notice and an opportunity to be heard. (R.39 at ¶ 3.) To comply with the mandate of

---

on the property owner and posted on the property, and conducts a hearing in which the property owner has a meaningful opportunity to be heard; or
(ii) makes an ex parte determination that there is probable cause for the forfeiture and that there are exigent circumstances that permit the Government to seize the property without prior notice and an opportunity for the property owner to be heard.

18 U.S.C. § 985(d)(1).

§ 985(d)(2),[2] which requires the Government to establish that means less restrictive than seizure would not suffice to protect the Government's interest in the continued unlawful use of the property, the Government stated that it had previously filed a lis pendens and that "less restrictive measures, such as a bond or restraining order, would be inadequate in this case to protect the Government's interests of preventing the continued unlawful use of the defendant real property." (R.39 at ¶4.)

The district court granted the Government's request for an ex parte seizure warrant.[3] In the warrant that issued, the district court found that the Government had established "probable cause for forfeiture of the defendant properties to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(A), that exigent circumstances presently exist that justify the immediate seizure of said properties without pre-seizure notice or hearing, and that less restrictive means are insufficient to protect the Government's interests therein[.]" (R.43 at 2.) Thereafter, federal marshals seized the Club and shut down its business operations. The Club remains closed for business.

---

[2] Section 985(d)(2) states:
 For purposes of paragraph (1)(B)(ii), to establish exigent circumstances, the Government shall show that less restrictive measures such as a lis pendens, restraining order, or bond would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property.
18 U.S.C. § 985(d)(2).

[3] The district court also granted the Government's application to appoint a custodian to manage and to preserve the assets of the Platinum Club. The order appointing a custodian is not an issue in this appeal.

In May 2002, the district court conducted a post-seizure adversarial hearing, pursuant to 18 U.S.C. § 985(e),[4] to provide the Bowmans an opportunity to contest the basis for the ex parte seizure. The Bowmans argued for the return of the Platinum Club, contending that the Government had failed to establish by a preponderance of the evidence (using admissible, non-hearsay evidence) that less restrictive means would not suffice to protect the Government's interest in preventing the Club's involvement in criminal activity.

In a memorandum of law submitted to the district court as part of the post-seizure hearing, the Government noted that a lis pendens was filed against the property; then, the Government simply declared that "neither the *lis pendens*, nor a restraining order, nor a bond would have effectively prevented the Bowmans from their deliberate continued use of the Platinum Club for illegal purposes." (R.59 at 5.) The Government also summarized the affidavit of Special Agent Perkins, which had been submitted with the ex parte application for the warrant, the contents of which showed that the Platinum Club continued to front illegal activities despite a pending forfeiture action.

---

[4]  Section 985(e) states:
> If the court authorizes a seizure of real property under subsection (d)(1)(B)(ii), it shall conduct a prompt post-seizure hearing during which the property owner shall have an opportunity to contest the basis of the seizure.

18 U.S.C. § 985(e).

The district court concluded that when reviewing the grant of an ex parte warrant at a post-seizure hearing, the statute requires only that the Government establish probable cause to believe that the real property is subject to forfeiture in order to sustain the seizure. The district court concluded that hearsay evidence can suffice to meet this burden of proof. Ultimately, the court concluded that exigent circumstances justified the ex parte seizure. Furthermore, the court determined that even assuming arguendo that there were no exigent circumstances, the Bowmans were not entitled to the return of their real property because the Government had established probable cause to believe the property was subject to forfeiture.

The Bowmans timely appeal the district court's decision.

ISSUE ON APPEAL

Prior to addressing the merits, it is our duty to determine whether we have jurisdiction over an appeal. As the order in question is interlocutory, we have jurisdiction only if the facts of this case fit the injunction analogy theory, which treats an interlocutory order as the functional equivalent of an injunction under 28 U.S.C. § 1292(a)(1), or the collateral order doctrine. Both of these jurisdictional theories require that the order at issue be effectively unreviewable on appeal after final judgment. Because we conclude that the district court's order is effectively

7

reviewable after final judgment, we dismiss the Bowmans' appeal for lack of jurisdiction.

## CONTENTIONS OF THE PARTIES

The Bowmans make three overlapping arguments. First, the Bowmans argue that the Government failed to establish the existence of exigent circumstances because the Government failed to establish that means less restrictive than seizure could not prevent continued unlawful use of the property. In conjunction with this argument, the Bowmans contend that the Government must establish the existence of exigent circumstances by a preponderance of the evidence; thus, they argue, the Government cannot use hearsay evidence to establish the existence of exigent circumstances.

As to the merits, the Government contends that it properly established the existence of exigent circumstances and probable cause, thereby justifying the ex parte seizure. With reference to the jurisdictional issue, the Government contends that we lack jurisdiction to hear this appeal.

## DISCUSSION

To decide the jurisdictional question requires several steps. First, we lay the foundation for a seizure analysis with a brief discussion of the Supreme Court's decision in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.

8

Ct. 492 (1993), the case upon which § 985 is modeled. Next, we discuss the remedy for an illegal seizure where the Government fails to establish the existence of exigent circumstances. Then, we turn to the issue of whether the Government continues to be justified in its seizure of the property if it fails to establish exigent circumstances at the post-seizure adversarial hearing, but succeeds in establishing probable cause to believe the property is subject to forfeiture, i.e. connected to crime. Once we determine that the Government should be entitled to retain possession of the property after a post-seizure adversarial hearing where the Government is able to establish probable cause to believe the property is connected to crime, despite a failure to establish exigent circumstances, we then turn to the question of whether we have jurisdiction over this appeal under either the injunction analogy or the collateral order doctrine. Because we conclude that the Bowmans' challenges fail to meet the third prong of both doctrines, which requires that the order at issue be effectively unreviewable on appeal after final judgment, we dismiss this appeal for lack of jurisdiction.

Both parties have briefed the jurisdictional question and both parties are in agreement that the order at issue is interlocutory. As an interlocutory order, we have appellate jurisdiction only if the order fits within the injunction analogy or the collateral order doctrine theories of jurisdiction.

Any analysis of an ex parte seizure of real property must begin with an understanding of the Supreme Court's decision in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S. Ct. 492 (1993). *Good* concerned an ex parte seizure of property under 21 U.S.C. § 881(a)(7). Under that section, property connected to a felony drug crime could be seized if the Government established probable cause to believe the property was connected with a felony drug crime. 21 U.S.C. § 881(b)(3). In concluding that the ex parte seizure of real property violates due process rights absent exigent circumstances, the *Good* court conducted a *Mathews*[5] analysis. The Court concluded that (1) the private interest affected by an ex parte seizure (property rights) is of historic and continuing importance, (2) the risk of erroneous deprivation after an ex parte hearing is unacceptably high and the value of additional safeguards (a pre-deprivation hearing) is therefore also high, and (3) the Government interest (seizing property before forfeiture) did not justify the ex parte seizure of real property and the administrative burden involved in holding a hearing prior to seizure was not significant because the Government would have to hold a hearing prior to forfeiture and "[f]rom an administrative standpoint it makes little

---

[5] *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976). Under this analysis courts must weigh the private interest affected by official action; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and the Government's interest, including the administrative burden that additional procedural requirements would impose. *Id.* at 335, 96 S. Ct. at 903.

difference whether that hearing is held before or after the seizure." *Good*, 510 U.S. at 59, 114 S. Ct. at 504. The Court determined that a general rule of pre-deprivation hearings was to be violated only in "extraordinary situations." *Id.* at 53, 114 S. Ct. at 501. Therefore, "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S. Ct. at 505. Thus, *Good* indicates that we are to take a *pre*-deprivation standard of probable cause and then add the requirement of exigent circumstances if the real property is to be seized without pre-deprivation notice and hearing.

With *Good* in mind, the starting point for a jurisdictional analysis in this case is to determine what the remedy is for an illegal seizure. Cases decided prior to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), but subsequent to *Good*,[6] demonstrate that claimants wishing to challenge a seizure believed to be illegal could bring a claim after final judgment in the forfeiture proceeding. Prior to CAFRA, in order to prevail at a forfeiture hearing, the Government was only required to establish probable cause to believe the property in question was connected to crime. *United States v. Carrell*, 252 F.3d 1193, 1200 (11th Cir. 2001). The burden then shifted to

---

[6] All circuits dealing with cases where *Good* was decided while the case was on direct appeal concluded that *Good* was retroactively applicable. *See, e.g., United States v. Marsh*, 105 F.3d 927, 931 (4th Cir. 1997).

11

the claimant to establish by a preponderance of the evidence that the property was not connected to crime. *Id.* at 1201. If the claimant could not meet that burden, then the property was forfeited. More often than not,[7] the court found that the Government established probable cause and the forfeiture was upheld on appeal.

Although the forfeiture might be upheld, the pre-forfeiture seizure could still be deemed illegal because there was no pre-seizure notice and hearing. The circuits split as to how to handle this situation. The Fourth and Tenth Circuits[8] made findings that there were no exigent circumstances justifying ex parte seizure and remanded so that the district courts could determine damages, while the Seventh Circuit[9] remanded so that the district court could, in the first instance, make a determination as to whether there were exigent circumstances. In *United States v. Land, Winston County*, 163 F.3d 1295, 1303 (11th Cir. 1998)*,* this circuit determined that because there was a general due process violation due to the lack of a pre-seizure hearing (without

---

[7] In *United States v. Real Property Located at 20832 Big Rock Dr.*, 51 F.3d 1402 (9th Cir. 1995), the court determined that there were no exigent circumstances, so the pre-forfeiture hearing seizure was illegal. 51 F.3d at 1406. However, the forfeiture was not upheld due to defects in the special verdict form and jury instructions and the case was reversed and remanded for a new trial. *Id.* at 1407.

[8] *Marsh*, 105 F.3d at 932; *United States v. 51 Pieces of Real Property Roswell, N.M.*, 17 F.3d 1306, 1315 (10th Cir. 1994).

[9] *United States v. All Assets & Equip. of West Side Bldg.*, 58 F.3d 1181, 1193 (7th Cir. 1995).

specifically mentioning exigent circumstances), the case should be remanded to the district court to determine damages. 163 F.3d at 1303.

All but one circuit have concluded that the remedy for an illegal seizure "[w]here . . . the government fails to provide pre-deprivation notice and hearing, but the property is found to be subject to forfeiture after the process due has been afforded" is return of rents or lost profits during the period of illegal seizure. *United States v. Real Property Located at 1184 Drycreek Road*, 174 F.3d 720, 728 (6th Cir. 1999); *see also United States v. 408 Peyton Road*, 162 F.3d 644, 647 (11th Cir. 1998) (en banc); *Land, Winston County*, 163 F.3d at 1303; *United States v. Marsh*, 105 F.3d 927, 931 (4th Cir. 1997); *United States v. All Assets & Equip. of West Side Bldg.*, 58 F.3d 1181, 1193 (7th Cir. 1995); *United States v. Real Property Located at 20832 Big Rock Dr.*, 51 F.3d 1402, 1406 (9th Cir. 1995); *United States v. 51 Pieces of Real Property Roswell, N.M.*, 17 F.3d 1306, 1315-16 (10th Cir. 1994). *But see United States v. One Parcel of Real Property Located at 9638 Chicago Heights*, 27 F.3d 327, 330 (8th Cir. 1994) (stating that a *Good* violation requires dismissal of the forfeiture action with leave to file a new action if the new action would still be timely). The case before us is the first case where all of the proceedings are taking place after the enactment of 18 U.S.C. § 985, so it presents an issue of first impression. But, because

13

§ 985 is in part a codification of *Good,* and we have caselaw addressing *Good*, we are not without assistance.

Assuming arguendo that the Bowmans are correct that the Government did not properly establish the existence of exigent circumstances, the pre-CAFRA caselaw suggests that the post-CAFRA remedy for the owner of real property would be the return of rents or lost profits. However, in these pre-CAFRA cases, the courts concluded that while the seizure was illegal, the forfeiture was ultimately justified. Hence, because these courts had confirmed that the Government's permanent taking of the real property was proper, the only remedy to which a petitioner could be entitled was lost rents or profits for the period of illegal seizure. The Bowmans' case presents a new issue. Here, because there has been no hearing on the merits of the forfeiture, the Bowmans are asking not for lost rents or profits, but for return of their property. Thus, we must now consider an issue that did not face the courts previously: whether the Government continues to be justified in its possession of the property prior to the forfeiture hearing, despite its illegal seizure (based on a failure to establish exigent circumstances).[10]

---

[10] We assume for the sake of discussion that there were no exigent circumstances in this case. We do not decide the issue.

To address this concern we must determine what burden the Government would bear if it had given the Bowmans notice and an opportunity to be heard prior to seizing the Platinum Club. We conclude that the standard of proof at a *pre*-seizure hearing under § 985(d)(1)(B)(i) is probable cause. This belief is based upon both the language of the statute and on our reading of *Good*. First, the ex parte seizure subpart of § 985 requires the Government to establish both probable cause to believe the property to be seized is connected to crime *and* to establish the existence of exigent circumstances. 18 U.S.C. § 985(d)(1)(B)(ii). The implication is that if the hearing is conducted prior to seizure under § 985(d)(1)(B)(i), then the Government need only establish probable cause to believe the real property is connected to crime.

This reading is supported by the reasoning in *Good*. In *Good*, the Supreme Court emphasized that only when the normal requirements for seizure are combined with the *additional* qualification of exigent circumstances, should the Government be permitted to seize real property without affording the owner notice and an opportunity to be heard. *Good*, 510 U.S. at 62, 114 S. Ct. at 505. Because §§ 985(d) and (e) of CAFRA are essentially a codification of *Good,* we conclude that if notice and an opportunity to be heard are given prior to seizure, then the Government need only establish probable cause to believe that the property is connected to crime.

15

It follows that if property is seized ex parte and the Government can show at the § 985(e) post-seizure adversarial hearing that there is probable cause to believe the property is connected to crime, but cannot establish exigent circumstances, then the ex parte seizure is illegal and the proper remedy is to give the owner lost profits or rents for the period of illegal seizure – a period terminated by a finding confirming the existence of probable cause following an adversarial hearing. But, because the Government has established probable cause (the burden it would have carried had there been a pre-seizure adversarial hearing), the Government can retain the property until the forfeiture hearing. *See Real Property Located at 1184 Drycreek*, 174 F.3d at 728 (finding that failure to establish exigent circumstances did not mean that the forfeiture was void); *408 Peyton Road*, 162 F.3d at 647 (same); *In re Tomlin*, 105 F.3d 927, 931 (4th Cir. 1997) (same); *All Assets and Equip. of West Side Bldg.*, 58 F.3d at 1193 (same); *Real Property Located at 20832 Big Rock Dr.*, 51 F.3d at 1406 (same); *51 Pieces of Real Property Roswell, N.M.*, 17 F.3d at 1319 (finding that because the claimant did not contest probable cause, the forfeiture should be affirmed). These cases were decided pre-CAFRA when the Government needed only to establish probable cause to believe the property was connected to crime in order to obtain a *forfeiture*. Hence, a failure to establish exigent circumstances combined

16

with success in establishing probable cause meant the Government kept the property but owed damages for the time it illegally possessed the property.

We now apply the pre-CAFRA logic to this post-CAFRA case. It would not be appropriate to return real property to the property owner if the Government can establish at the post-seizure adversarial hearing (as it has in this case) that there is probable cause to believe that the property is connected to criminal activity. The effect of returning the property to the property owner under these circumstances would be to allow the continuation of illegal activity, an outcome Congress surely did not intend.

Turning to what Congress clearly did intend, we do not believe that allowing the Government to retain possession of the property flouts the purpose of CAFRA. CAFRA was "designed to increase the due process safeguards for property owners whose property has been seized" and "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." H.R. Rep. 106-192, P.L. 106-185, Civil Asset Forfeiture Reform Act, June 18, 1999. More specifically, CAFRA was "designed to rectify an unfairness to the individual vis-a-vis the government. It corrects an aberration that existed previously by leveling the playing field between the government and persons whose property has

been seized," i.e., forcing the Government to prove that property is subject to forfeiture as opposed to forcing the property owner to prove his property is *not* subject to forfeiture. *United States v. Real Property in Section 9, Town 29 North*, 241 F.3d 796, 799 (6th Cir. 2001). The burden of establishing the propriety of seizure is always on the Government. If there is an ex parte seizure of real property and at the post-seizure adversarial hearing the Government is unable to convince the court that there is probable cause to believe that the property is connected to crime, then there is no basis for seizure and the appropriate remedy is to return the property to the owner. *See, e.g., United States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191 F.3d 668, 673 (6th Cir. 1999) (pre-CAFRA, stating that lack of probable cause for seizure requires return of the property to its owner). But that is not the case here. The Government has sustained its burden of convincing the court, after the Bowmans have been given the CAFRA-created opportunity to contest the basis of the seizure at an adversarial hearing, that there is probable cause to believe that the Club is connected to crime. As for Congress's fairness concerns, "fairness" to the property owner does not mean allowing a property owner to continue to use his property to further crime.

In summary, a real property owner who successfully challenges an ex parte seizure on the ground that there was no probable cause to believe the property is

18

connected to crime may regain possession of his property. But if the real property owner is only contending that there were no exigent circumstances to justify the ex parte nature of the seizure (as in this case), the owner is not entitled to regain possession, but may recover lost rents or profits. We draw this distinction because the remedy is important under either an injunction analogy or collateral order theory of jurisdiction. It is to these jurisdictional theories we now turn.

Under the injunction analogy, we have jurisdiction under 28 U.S.C. § 1292(a)(1) over an interlocutory order if the interlocutory order: (1) has the effect of an injunction; (2) has serious, perhaps irreparable consequence; and (3) is effectively unreviewable on appeal. *United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998).

Under the collateral order doctrine, a court may exercise appellate jurisdiction if the challenged order: (1) conclusively determines a disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment. *United States v. One Parcel of Real Property with Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1497 (11th Cir. 1985) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 1225 (1949)).

We need not discuss the first and second prongs of these tests as it is necessary to meet all three prongs and the Bowmans fail the third prong of both tests. The Bowmans contend that any appeal following final judgment will involve only the propriety of any forfeiture judgment and will not address the lawfulness of the seizure prior to final judgment. The Government responds that the propriety of the seizure would not be unreviewable on appeal following final judgment. We agree with the Government.

What makes an issue "*effectively* unreviewable on appeal" is the insufficiency of the remedy after final judgment. *See One Parcel of Real Property with Bldgs., Appurtenances & Imporovements*, 767 F.2d at 1497 (stating that an order is effectively unreviewable after final judgment if it causes irreparable harm in the mean time). In *One Parcel of Real Property* we stated that the harm that a business might suffer due to loss of goodwill after being prohibited from selling certain items available from competitors in neighboring towns pending a trial regarding the constitutionality of the ordinance proscribing the sale of the items was "irreparable." *Id.* In that case, the passage of time until trial could increase the injury to goodwill the business might innocently suffer should the ordinance be declared unconstitutional at trial. In contrast, the passage of time will not increase the Bowmans' injury. If on appeal a court finds that there were no exigent circumstances,

the Bowmans' injury will span a discrete period of time. The loss of goodwill, the injury the Bowmans claim, is not a factor here, since under no circumstances may the Bowmans recover their property and reopen their business prior to a final judgment in their favor. Therefore, as the remedy discussion demonstrates, a claim of illegal seizure based upon the Government's failure to establish exigent circumstances is effectively reviewable on appeal following final judgment. Hence, we do not have jurisdiction to consider the Bowmans' appeal under either the injunction analogy theory of jurisdiction or the collateral order doctrine.

## CONCLUSION

For the foregoing reasons, we hold that the remedy for an illegal ex parte seizure based on the Government's failure to establish exigent circumstances, where the Government is able to establish probable cause to believe the property is connected to crime at the post-seizure adversarial hearing, is a recovery by the real property owner of rents or lost profits during the period of illegal seizure, with the Government retaining possession of the property until the forfeiture action is decided on the merits. In this case all of the Bowmans' arguments go to the issue of exigent circumstances, so at best they can hope to recover lost profits. The two theories that could provide jurisdiction require a harm that will be effectively unreviewable after final judgment. An exigent circumstances challenge is effectively reviewable on

appeal after final judgment in the forfeiture action. The passage of time will not increase the injury the Bowmans suffer if their property was illegally seized because the probable cause finding terminated the period of illegal seizure. Therefore, we lack interlocutory appellate jurisdiction under either the injunction analogy or the collateral order doctrine as the Bowmans' challenges fail the third prongs of these doctrines. Thus, we do not address the merits and dismiss this appeal.

APPEAL DISMISSED.

BARKETT, Circuit Judge, dissenting:

I believe that under either the "injunction analogy" approach or the collateral order doctrine we have jurisdiction to hear this appeal because the proper remedy for a violation of the Civil Asset Forfeiture Reform Act of 2000's ("CAFRA") ex parte seizure provision is the return of the property to its owner. Denying the Bowmans possession of their property will result in a loss of the business' goodwill, which is an irreparable harm that is effectively unreviewable on final appeal. Thus, this Court may properly exercise jurisdiction over the case.[1] See Florida Businessmen for Free Enterprise v. City of Hollywood, 648 F.2d 956, 958 n.3 (5th Cir. 1981).[2]

The property at issue was seized through an ex parte, pre-forfeiture seizure proceeding. However, CAFRA generally prohibits the governmental seizure of any real property that is the subject of a civil forfeiture action unless and until a court enters an actual forfeiture order with notice and a hearing provided to all relevant parties. See 18 U.S.C. § 985(b)(1)(A) ("real property that is the subject of a civil forfeiture action shall not be seized before entry of an order of forfeiture"). An

_____

[1] This assumes the satisfaction of the first and second prongs of either the injunction analogy or the collateral doctrine. See United States v. City of Hialeah, 140 F.3d 968, 973 (11th Cir. 1998) (injunction analogy); Sell v. United States, 123 S. Ct. 2174, 2182 (2003) (collateral order doctrine).

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

23

exception to this rule is set forth in 18 U.S.C. § 985(d)(1)(B)(ii), which permits the ex parte seizure of real property if the district court first determines both that there is probable cause for the forfeiture and that exigent circumstances prevent the government from providing notice. 18 U.S.C. § 985(d)(1)(B)(ii); see also United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993) (hereinafter "Good") (stating that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process"). Where either requirement is absent, the seizure is invalid and the property should be returned to its owner. In this case, the government failed to establish exigent circumstances at the pre-seizure hearing.[3]

The majority worries that "the effect of returning the property to the property owner under these circumstances would be to allow the continuation of illegal activity. . . ." Majority Opinion at 17. However, CAFRA articulates numerous methods that allow for the return of a property to its owner while concurrently protecting both the government's interest in preventing continued illegal activity and

---

[3] "[T]o establish exigent circumstances, the Government [must] show that less restrictive measures such as a lis pendens, restraining order, or bond would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property." 18 U.S.C. § 985(d)(2). As this subsection makes plain, bare governmental concerns about the continued unlawful use of real property do not establish exigent circumstances. Rather, the government must "show that less restrictive measures" would be insufficient to combat this continued unlawful use. Id. Here, the government presented no evidence to establish the futility of less restrictive measures, such as an arrest warrant, restraining order, or the appointment of a custodian to operate the business.

24

the owner's interest in preserving the property's financial value.[4] Most relevant to this case, CAFRA countenances the appointment of a custodian to take administrative control over a property at any time, including at the § 985(d)(1)(e) post-seizure hearing. See 18 U.S.C. § 983(j). By appointing a custodian, the court can guard against the continued illegal use of a property without perpetuating an unlawful seizure. Indeed, it is precisely because the government has at its disposal numerous and sundry less restrictive devices to prevent ongoing criminal activity that an ex parte, pre-forfeiture seizure is so heavily disfavored by both the Constitution and CAFRA.[5] See Good, 510 U.S. at 58. In contrast, permitting the government to retain an illegally seized property results in an evisceration of CAFRA's prohibitions. See 18 U.S.C. § 985(d)(1)(B)(ii), (e).

---

[4] Indeed, 18 U.S.C. § 983(j)(1) sets forth several alternatives to pre-forfeiture seizures: Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture. 18 U.S.C. § 983(j)(1).

[5] It is of little moment that, in this case, the Government filed a lis pendens against the Platinum Club. This is not an appropriate "less restrictive measure" to prevent the continued unlawful use of real property. "The purpose of a lis pendens is to notify prospective purchasers and encumbrancers that any interest acquired by them in property is subject to the decision of the court in pending litigation." United States v. 408 Peyton Rd., 162 F.3d 644, 646 n.2 (11th Cir. 1998). While such notice is likely very helpful in preventing the unauthorized sale of a property, it can have no impact on the continued unlawful use of a property. See Good, 510 U.S. at 58-59.

CAFRA makes it clear that the § 985(e) post-seizure hearing is specifically designed to ensure that the original ex parte seizure itself was proper. See 18 U.S.C. § 985(e). Section 985(e) states that "[i]f the court authorizes a seizure of real property under subsection (d)(1)(B)(ii), it shall conduct a prompt post-seizure hearing during which the property owner shall have the opportunity to contest the basis for the seizure." Id. Again, under § 985 (d)(1)(B)(ii), the basis for an ex parte seizure is a showing of both probable cause and exigent circumstances. Thus, if at the post-seizure hearing a property owner is able to show that either probable cause or exigent circumstances were not present at the pre-seizure hearing, then the seizure is illegal and, therefore, invalid. See 18 U.S.C. § 985(b)(1)(A). A finding of probable cause, alone, at the post-seizure hearing cannot remedy an otherwise deficient seizure.[6]

Indeed, I find it illogical to conclude that, although an ex parte seizure is improper when the government fails to satisfy one of the two requirements set forth in § 985(d)(1)(B)(ii) (e.g., exigent circumstances), the seizure may nonetheless continue if, at the post-seizure hearing, the government satisfies only one of the two requirements (e.g., probable cause). Under this rationale, the government could

---

[6] As we have previously stated, "[t]he [Supreme] Court [has] rejected the argument that due process is satisfied by a post-seizure hearing." United States v. 2751 Peyton Woods Trail, 66 F.3d 1164, 1166 (11th Cir. 1995) (citing Good, 510 U.S. at 62). Here, the process due was a showing of both probable cause and exigent circumstances. See 18 U.S.C. § 985(d)(1)(B)(ii); Good, 510 U.S. at 53.

26

always flout the exigent circumstances requirement of an <u>ex parte</u>, pre-forfeiture seizure because the seizure would invariably be vindicated at the post-seizure hearing based solely on probable cause. Such a conclusion directly contravenes the plain language of CAFRA. <u>See</u> 18 U.S.C. § 985(d)(1)(B)(ii), (b)(1)(A). We should not permit the government to accomplish indirectly that which it cannot achieve directly under § 985(d)(1)(B)(ii) and thereby plainly disregard the law.

Because we have jurisdiction upon a proper understanding of the remedy for an unlawful <u>ex parte</u> seizure (i.e. the return of the seized property to its owner), I respectfully dissent.