UNITED STATES of America

v.

ALL THAT TRACT OR PARCEL OF LAND, TOGETHER WITH ALL AP-PURTENANCES THEREON, COMMONLY KNOWN AS 5054 STONEY POINT LAKE, STONE MOUNTAIN, DEKALB COUNTY, GEORGIA AND TITLED IN THE NAME OF WARREN FORD, Defendant.

Civil Action No. 1:90–CV–2546–WCO.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 12, 2010.

Dahil Dueno Goss, Office of United States Attorney, Atlanta, GA, for United States of America.

### ORDER

WILLIAM C. O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of petitioner Warren Ford's "Nunc Pro Tunc Motion in Accord with F.R.Cv.Proc., R. 60(b)(3)(4)(6) and F.R.Cr.Proc., R. 41(g) [sic]" [21], which seeks to set aside a default judgment on a forfeiture complaint entered by the court on June 5, 1991.

### I. Factual Background

This motion stems from a civil forfeiture complaint filed by the United States against the defendant property on November 14, 1990. Agents of the Drug Enforcement Administration believed that the defendant property was used to facilitate the sale or distribution of controlled substances, and that it was thereby subject to forfeiture under 21 U.S.C. § 881(a)(7). Petitioner Warren Ford was the titleholder of the property at the time of the filing of the civil forfeiture complaint.

The criminal cocaine distribution and money laundering operation underlying this civil forfeiture action came to light on October 29, 1990, when federal agents obtained a search warrant from a federal magistrate judge to search claimant's home, 5054 Stoney Point Lane, the defendant property. *See United States v. Harris,* 20 F.3d 445, 448 (11th Cir.1994). When the warrant was executed at the property the following day, federal agents found and arrested two of petitioner's co-conspirators and recovered large quantities of cocaine, large amounts of cash, and several firearms hidden on the property. Although federal agents possessed an arrest warrant for petitioner Ford, he remained at large until he was finally apprehended in February 1992.

After the grant of a mistrial in his first criminal trial, petitioner was convicted during his second trial in October 1992 of: 1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; 2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); 3) possession of a firearm in relation to a drug felony in violation of 18 U.S.C. § 924(c)(2); 4) money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and 5) structuring cash transactions to evade federal reporting requirements in violation of 31 U.S.C. § 5324 and 18 U.S.C. § 2. *Harris,* 20 F.3d at 447 (affirming petitioner's convictions).

In regard to the civil forfeiture action, the original complaint was filed on November 14, 1990. A *lis pendens* on the property was filed on the same date. Subsequently, on February 19, 1991, the United States Marshals Service attempted to personally serve petitioner with the summons, complaint and warrant for arrest because he was the titleholder of the property. The United States Marshals were unable to effect service because the defendant property was vacant and petitioner's location was unknown. The United States Marshals left a copy of the documents attached to the front door of the defendant property.

As additional notice, the United States published a Public Notice of Action and Arrest in the *Atlanta Journal Constitution,* a newspaper of general circulation in the Northern District of Georgia, for three consecutive weeks on February 20, 27 and March 6, 1991. Furthermore, the United States provided copies of the complaint, summons and warrant for arrest to BarclaysAmerican Mortgage Corporation ("Barclays") and Kensington Properties ("Kensington") on March 4, 1991, the only other potential claimants of the property. Both acknowledged service of process.

When no response was received from petitioner, the clerk entered default as requested on May 8, 1991, pursuant to Federal Rule of Civil Procedure 55(a). The United States then moved for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). The default judgment was granted by the court on June 5, 1991.

The court later entered a modified consent order on April 1, 1992, conveying the defendant property via quitclaim deed to Barclays, because there was insufficient equity in the property to cover the interests of all parties. Kensington relinquished all of its claims to the property. (Apr. 1, 1992 Order 1–2.) The forfeiture judgment was not appealed and became final. Petitioner now brings the instant motion more than eighteen years after the original entry of judgment.

## II. Claims Under Federal Rule of Criminal Procedure 41(g)

Petitioner asserts several grounds for relief in this out of time motion. He first argues that the defendant property should be returned to him with interest under Federal Rule of Criminal Procedure 41(g), because the property was never used as evidence of any crimes. However, as the United States correctly notes, the Federal Rules of Criminal Procedure are applicable only in criminal and not in civil proceedings. *See* Fed.R.Crim.P. 1(a)(5)(b) ("Proceedings not governed by these rules include .... a civil property forfeiture for violating a federal statute....."). Thus, they are not relevant to this civil forfeiture proceeding.

The proper procedure is to file a claim in the civil forfeiture action itself, not a Rule 41(g) motion. *See United States v. Reed,* 340 Fed.Appx. 603, 603 (11th Cir. 2009) (citing *United States v. Castro,* 883 F.2d 1018, 1020 (11th Cir.1989)). Thus, petitioner has no basis for relief under Federal Rule of Criminal Procedure 41(g) and his request for such relief is denied.

## III. Claims Under Federal Rule of Civil Procedure 60(b)(3)

Petitioner also attempts to raise grounds for relief under Federal Rule of Civil Procedure 60(b)(3), 60(b)(4) and 60(b)(6). Federal Rule of Civil Procedure 60(b)(3) permits relief from a final judgment based on fraud, misrepresentation, or misconduct by an opposing party. However, a motion under Rule 60(b)(3) must be made no more than a year after the entry of judgment. *See* Fed.R.Civ.P. 60(c)(1). This motion was filed on December 31, 2009, over eighteen years after the final judgment order entered June 5, 1991. Clearly, petitioner's motion is untimely under Rule 60(b)(3). Furthermore, Federal Rule of Civil Procedure 6(b)(2) specifically provides that a court must not extend the time to act under Rule 60(b). Petitioner's Rule 60(b)(3) motion is therefore denied as untimely.

## IV. Claims Under Federal Rule of Civil Procedure 60(b)(6)

█ Petitioner next requests relief under Federal Rule of Civil Procedure 60(b)(6). A court may grant relief from a final judgment or order under this subsec-

tion for "any other reason that justifies relief." Such a request must be filed "within a reasonable time" after entry of the challenged judgment or order. *See* Fed.R.Civ.P. 60(c)(1). A determination of what constitutes a reasonable time depends on the facts in an individual case. A court should consider whether the movant has a good reason for the delay in filing and any prejudice to the nonmoving party caused by the delay. *Ramsey v. Walker,* 304 Fed.Appx. 827, 828 (11th Cir.2008) (citing *Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 930 (5th Cir.1976)).[1]

Furthermore, even if the court finds that the motion was filed within a reasonable time, to obtain relief petitioner must "demonstrate that the circumstances are sufficiently extraordinary to warrant relief." *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1317 (11th Cir.2000) (citation omitted). The decision of whether to grant relief is "a matter for the district court's sound direction." *Id.* (citations omitted).

Petitioner raises two later Supreme Court rulings as grounds for relief. He claims that the first case, *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), required personal notice and a hearing prior to the seizure of the defendant property. The second decision, *Degen v. United States,* 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996), disallows the use of the fugitive disentitlement doctrine, which was allegedly used to deprive petitioner of his right to protest the seizure of the defendant property.

■ The decisions in *James Daniel Good Real Property* and *Degen* were ren-

dered sixteen and thirteen years prior, respectively, to the filing of this motion. The court cannot conceive of any possible reason for delaying this filing for over thirteen years. Although petitioner has been incarcerated during this time, and presently remains incarcerated, he has certainly had sufficient access to the courts and to legal research materials. Indeed, petitioner has filed numerous *pro se* motions in this court over the previous thirteen years relating to his criminal convictions.[2]

Moreover, petitioner provides no explanation for the delay in filing this motion. The long and unexplained delay counts heavily against a finding that the current claim was filed within a reasonable time of final judgment. The Eleventh Circuit has previously held two year delays between the decision of an allegedly favorable new case and the filing of a motion seeking relief from a judgment on that basis to be unreasonable. *See Ramsey,* 304 Fed. Appx. at 829. The court finds this thirteen-year delay unreasonable.

Furthermore, due to the significant age of this matter, the court finds that requiring the United States to defend the case now would impose an unduly heavy burden, especially because the United States no longer owns the property and did not receive any funds from its sale. (Apr. 1, 1992 Consent Order 1–2.) Thus, considering the facts of the case, possible reasons for petitioner's delay in filing, and any prejudice caused to the United States, the court denies petitioner's request for relief under Rule 60(b)(6) as untimely.

---

**1.** Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, constitute binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981).

**2.** In addition to the present brief, petitioner has filed a variety of legal petitions and motions in the Northern District of Georgia. He filed at least one, and sometimes several pleadings, in 1997, 1998, 1999, 2000, 2001, 2002, 2004, 2005, 2008, 2009, and 2010.

## V. Claims under Federal Rule of Civil Procedure 60(b)(4)

■ Petitioner's final claim for relief is based on Rule 60(b)(4), asserting that the forfeiture judgment against the defendant property was void. A judgment will be considered void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter or the parties, or if it acted in a manner inconsistent with due process of law. *Burke v. Smith,* 252 F.3d 1260, 1263 (11th Cir.2001). Petitioner appears to argue that the court's judgment was inconsistent with due process of law.

There are two separate grounds advanced as alleged deprivations of due process. First, petitioner argues that the judgment is void because it is "predicated on an impermissible legal theory" of the "judicially-created fugitive disentitlement doctrine." (Pet'r's Mot. 1–2.) Petitioner apparently argues that language from the court's "Memorandum in support of motion for entry of order and judgment of forfeiture [sic]" stated that "[m]oreover, Warren Ford is not entitled to participate in this forfeiture action and has waived any defenses he may have had against the forfeiture of his interest in the defendant property because of his fugitive status." *Id.*

The court construes this argument as an assertion that it improperly utilized the fugitive disentitlement doctrine to deprive petitioner of the ability to defend the seizure of his property. The fugitive disentitlement doctrine was formerly a judicially created doctrine whereby a criminal defendant who was a fugitive from justice was prevented from invoking the judicial process in a civil forfeiture action and was considered to have waived any defenses to forfeiture that he may have possessed. *See United States v. One Parcel of Real*

*Estate,* 868 F.2d 1214, 1215 (11th Cir.1989). In *Degen,* the Supreme Court held that this judicially-created doctrine could not be used to strike the pleadings of a claimant in a civil forfeiture action who was a fugitive from justice in the related criminal proceeding. 517 U.S. at 828–29, 116 S.Ct. 1777.

■ Petitioner's argument is without merit. The text quoted in petitioner's brief that he attributes to the court is not from any order issued by the court. The quote is actually from a brief filed by the Assistant United States Attorney in support of the United States' motion for default judgment. (*See* Pl.'s Mem. Supp. Mot. for Entry of Order & J. of Forfeiture 3.) The only mention the court makes of the fugitive disentitlement doctrine in its order is the following excerpt, made after the court held that the United States' attempted service upon claimant was sufficient: "[m]oreover, even if personal service had been accomplished upon Warren Ford, he would not have been entitled to contest this forfeiture action while remaining a fugitive from justice." (June 5, 1991 Order 4.) It is clear from this statement that the judgment of the court does not invoke the fugitive disentitlement doctrine. The court merely noted that even if petitioner had received personal service he would not have been able to contest the action while remaining a fugitive.

Furthermore, even if the court had utilized the fugitive disentitlement doctrine, petitioner would not be entitled to relief. *Degen* was legislatively superseded by Congress in 2000 with the passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, 114 Stat. 202 (2001) (codified in relevant part at 28 U.S.C. § 2466).[3] Under this statute, a ju-

---

**3.** The opinion in *Degen* made clear that the Court was invalidating the fugitive disentitlement doctrine only because the rule was too harsh to impose under the Court's inherent authority, not because it was inherently unconstitutional. 517 U.S. at 829, 116 S.Ct. 1777.

dicial officer may prevent a person from using the resources of the courts of the United States in furtherance of a claim in any civil forfeiture action upon a finding that the person is evading the jurisdiction of the court in a related criminal case. *See* 28 U.S.C. § 2466(a)(1)(C). This statute effectively reinstated the use of the fugitive disentitlement doctrine. Indeed, the doctrine is currently alive and well, as evidenced by its use in recent court opinions. *See, e.g., United States v. $343, 726.60 in United States Currency,* 271 Fed.Appx. 972, 973 (11th Cir.2008) ("[W]e conclude that the district court properly denied [petitioner's] forfeiture claim based on the Fugitive Disentitlement doctrine."); *United States v. One 1988 Chevrolet Half-Ton Pickup Truck,* 357 F.Supp.2d 1321, 1333 (S.D.Ala.2005) ("[N]othing in the May 17, 2004 Order counsels against application of the fugitive disentitlement doctrine to bar [petitioner's] claim.").

█ Petitioner's second due process argument alleges that his property was illegally seized without notice and a hearing. Due process requires that an individual receive notice and a hearing prior to any governmental deprivation of property. *James Daniel Good Real Property,* 510 U.S. at 48–49, 114 S.Ct. 492. The standard used to determine if a procedure provided sufficient notice to satisfy due process is the "straightforward test of reasonableness under the circumstances." *Dusenbery v. United States,* 534 U.S. 161, 166, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (citation omitted).

The defendant property was subject to forfeiture under 21 U.S.C. § 881(a)(7) as real property used in the commission of drug crimes. The Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Admiralty Rules") apply to forfeiture actions in rem arising from a federal statute. *See* 18 U.S.C. § 981(b)(2)(A). At the time of the original forfeiture action, notice under these rules was statutorily sufficient. *See In the Matter of $89, 000,* 691 F.Supp. 1411 (N.D.Ga. 1988). The Admiralty Rules require publication of the forfeiture proceeding once a week for three consecutive weeks in a newspaper generally circulated in the district where the action was filed. *See* Fed. R.Civ.P., Supp. R. G(4)(a)(iii)-(iv).

These procedures were fully complied with as written notice was served upon petitioner's property by the United States Marshals and was printed for three weeks in the *Atlanta Journal Constitution,* a local newspaper in general circulation in the district.[4] (June 5, 1991 Order 2.) The other two interested parties were also personally served.

CAFRA supplemented the Admiralty Rules with additional notice requirements for civil forfeiture actions involving real property. CAFRA requires posting a notice of the forfeiture complaint on the property. Notice must also be served on the property owner, along with a copy of the complaint. *Id.* § 985(c)(1). However, if the property owner is a fugitive and cannot be located despite the exercise of due diligence, constructive service can be made in accordance with the laws of the State in which the property is located. *Id.* § 985(c)(2)(c). Under Georgia law, constructive notice of civil forfeiture proceedings relating to a criminal matter can be

---

**4.** Petitioner's claims that his legal address of residence at the time was located in Bradenton, Florida, or that notice should have been provided in a newspaper of national circulation are unsupported by fact or law. *See* N.D. Ga. R. 7.1 ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority. If allegations of facts are relied upon, supporting affidavits must be attached to the memorandum of law.").

accomplished through mailing a copy of the notice via certified mail to the address of the property or publication in two consecutive issues of a newspaper of general circulation in the county in which the seizure occurs. O.C.G.A. § 16–13–49(i)(2).

The notice given in this proceeding was sufficient under CAFRA. A copy of the complaint was posted on the defendant property by the United States Marshals. At the time of the original forfeiture action, there were serious criminal charges pending against petitioner, and law enforcement officers were actively attempting to locate him. The government therefore exercised due diligence attempting to locate petitioner. Thus, constructive notice under Georgia law was permissible. The publication of notice in the *Atlanta Journal Constitution*, a newspaper in general circulation in Dekalb County, for three consecutive weeks provided sufficient constructive notice.

■ The court concludes that under all of the circumstances, the notice given to petitioner was reasonable. The notice given complied with both the Admiralty Rules and CAFRA. Furthermore, if the United States was unable to locate petitioner for more than a year for the related criminal proceedings, it seems unreasonable to require the United States to have located him for purposes of notice for a civil forfeiture proceeding.

■ Lastly, even if petitioner established a due process violation, he would not be entitled to the return of his property plus interest of twelve percent per year as he demands. Under current statutory (CAFRA) and constitutional law, the remedy for a seizure without notice and a hear-

ing where the government has demonstrated probable cause for the seizure is to allow the property owner to recover lost rents or profits. *See United States v. Bowman,* 341 F.3d 1228, 1236 (11th Cir. 2003). This accords with any and all fairness concerns, as fairness does not encompass "allowing a property owner to continue to use his property to further crime." *Id.* The court has already found that the initial seizure of the defendant property was supported by probable cause. (June 5, 1991 Order 4.)

Therefore, even assuming that petitioner was entitled to relief, he could recover only lost rent or profits. Since petitioner provided no evidence of lost rent or profits, he would be entitled to nothing. Thus, this court denies any and all relief under Rule 60(b)(6) as both untimely and unwarranted.[5]

## VI.  Conclusion

Based on the foregoing, petitioner's "Nunc Pro Tunc Motion in Accord with F.R.Cv.Proc., R. 60(b)(3)(4)(6) [sic] and F.R.Cr.Proc., R. 41(g) [sic]" [21] is hereby **DENIED** in full.

■

---

**5.** The remainder of petitioner's requests, including his request for the production of all documentation showing that he signed over his rights to the property and his demand for a hearing within three days are dismissed as frivolous and having no warrant in any law.

*See* N.D. Ga. R. 7.1 ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority. If allegations of facts are relied upon, supporting affidavits must be attached to the memorandum of law.").